IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HEATH M.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 CV 3384 |
| v. | ) | |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security,[2] | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Plaintiff Heath M.'s motion seeking remand of the Administrative Law Judge's ("ALJ") opinion denying his application for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") (D.E. 17) and the Commissioner's cross motion to affirm that decision. (D.E. 26.) [3]

### I.   PROCEDURAL HISTORY

Plaintiff filed his claim for benefits on June 22, 2016, alleging he has been disabled due to chronic pain, fatigue, anxiety, and depression due to thoracic outlet syndrome, myoclonic epilepsy with ragged red fibers ("MERRF"), chronic pain syndrome, and neuropathy since March 9, 2014. (R. 15-17.) On September 12, 2018, Plaintiff, who was represented by counsel, testified at a

---

[1] Plaintiff's surname has been omitted from this opinion in compliance with the Court's Internal Operating Procedure No. 22.

[2] The Court substitutes Kilolo Kijakazi for her predecessor, Andrew Saul, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On August 5, 2020, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 12.)

1

hearing before an Administrative Law Judge ("ALJ"). Additionally, two impartial medical experts testified at the hearing (one in internal medicine and one in mental health), as well as a vocational expert ("VE"). On January 18, 2019, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. (R. 12.)[4]

## II.    ALJ's DECISION

The ALJ applied the five-step inquiry required by the Social Security Act in reaching his decision to deny Plaintiff's request for benefits. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 9, 2014, the alleged onset date. (R. 17.) At Step Two, the ALJ determined that Plaintiff suffered from the following severe impairments: status post thoracic outlet release surgery, myoclonic epilepsy with ragged red fibers[5], chronic pain syndrome, neuropathy, depressive disorder, and anxiety disorder. (R. 17.) The ALJ determined that Plaintiff's physical impairment of migraine was non-severe because it did not cause more than minimal limitations. (R. 18.)

At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments. (R. 18.) In support of this finding, the ALJ assessed the so-called "paragraph B criteria" for evaluating mental limitations and found that Plaintiff's impairments caused a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with

---

[4] The Appeals Council ("AC") subsequently denied review of the opinion (R. 1-3), making the ALJ's decision the final decision of the Commissioner. *Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021).

[5] Myoclonic epilepsy with ragged red fibers ("MERFF") is a disease that is a mitochondrial myopathy. The main symptoms of mitochondrial myopathy are muscle fatigue, weakness, and exercise intolerance. MERRF in particular is marked by myoclonus (muscle jerks), seizures, ataxia, and muscle weakness. *See* https://www.ninds.nih.gov/health-information/disorders/mitochondrial-myopathies, last visited on May 15, 2023.

others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing herself. (R. 18-19.)

Before turning to Step Four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b), except he is able to frequently use his upper extremities to grasp, handle and finger; he is able to occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl but never climb ladders, ropes, or scaffolds; he must avoid exposure to unprotected heights; he is able to understand, remember, and execute simple job instructions and tolerate occasional interaction with co-workers and supervisors but he is not able to engage in any collaborative joint projects with them or engage the public; he is not able to perform work with numerically strict hourly production quotas but he is capable of meeting end of day employer expectations for accomplishing work tasks.

(R. 20.) At Step Four, the ALJ noted that Plaintiff was unable to perform any past relevant work. (R. 28.) At Step Five, the ALJ concluded that a significant number of jobs existed in the national economy that Plaintiff could perform given his age, education, work experience, and RFC, including the representative positions of assembler/arranger, inspector, and mail clerk. (R. 29.) As such, the ALJ found that Plaintiff had not been under a disability since March 9, 2014, the alleged date of onset. (R. 29.)

### III.   ANALYSIS

#### A. Legal Standard

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, – U.S. –, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. The Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination. Rather, this court asks whether the ALJ's decision reflects an adequate logical

3

bridge from the evidence to the conclusions." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (citations and quotations omitted). The claimant has the burden of proof at steps one through four of the five-step sequential process for determining disability. *See Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). At Step Five, the burden of proof shifts to the Commissioner of Social Security to show that the claimant can adjust to other work existing in "a significant number of jobs…in the national economy." *See Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020).

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014), quoting *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

### B. The Physical RFC Determination Was Not Supported By Substantial Evidence.

Plaintiff argues that the ALJ failed to evaluate adequately his physical RFC, including failing to find that the crutches and cane for the Plaintiff's pain, balance issues, and gait issues were medically necessary. (D.E. 18: Pl.'s Br. at 10-12, 14-15.) For the following reasons, the Court agrees. Because this error necessitates a remand to the Social Security Administration, the Court will not address Claimant's remaining arguments. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's

4

limitations in concentration, persistence, and pace, we do not address DeCamp's other arguments."). The Court's decision in this regard is not a comment on the merits of Claimant's other arguments and he is free to assert them on remand.

In his opinion, the ALJ assigned "little weight" to the opinion of treating physician David Noparstak, M.D., who had advised the Plaintiff to use a cane and crutches for his balance and gait issues. (R. 24.)[6] In reaching that conclusion, the ALJ noted that the Plaintiff's "gait was noted to be antalgic at times and a cane was recommended after he complained of problems with his balance but the evidence fails to show it was medically necessary." (R. 25.)[7]

A cane or other hand-held assistive device must be incorporated in an RFC if it is a medical necessity. *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012); *see* SSR 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996) ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). In this case, the record is replete with evidence of the Plaintiff's need for hand-held assistive devices, including but not limited to:

- At an April 2016 neurological visit, Plaintiff's doctors noted that he had MERFF syndrome with bilateral lower extremity weakness and "gait disorder." (R. 588.) Although he had no "recent falls," his provider referred him to physical therapy and wrote that he "may benefit from cane or other walking device." (*Id.*)

---

[6] This case was filed before March 27, 2017, so the applicable regulations require that the ALJ must evaluate "every medical opinion" and assign a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c); *see Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018).

[7] Notably, the portion of the ALJ's opinion containing this quotation, which purports to analyze Dr. Noparstak's opinion, is repeated verbatim later on in the section of the ALJ's opinion purporting to analyze the opinion of the impartial medical expert Dr. Subramaniam Krishnamurthi, M.D. The Court addresses Dr. Krishnamurthi's testimony and opinion below.

- At a July 2016 doctor visit, Plaintiff reported "feeling unsteady walking" but "no falls." (R. 601.) At that time, he was assessed as having a "wide based gait, with slow turns" and a "slightly impaired gait, decreased [lower extremity] muscle strength." (R. 603.) Plaintiff's treating physician noted that a cane or other walking device "may benefit" Plaintiff. (*Id.*)

- At an August 31, 2017, doctor appointment, Plaintiff, who was not using a cane at the time, reported that his balance was "bad" and that he had fallen, and described to his physician that he "suddenly loses balance 'as if someone pushed me.'" (R. 887.)

- Gait disorder noted at January 25, 2018 doctor visit. (R. 959.)

- March 28, 2018, report from Dr. Noparstak noting (in addition to a list of the Plaintiff's more general issues) that Plaintiff had "chronic but somewhat less severe pain, muscle spasticity, and the Gait & Balance problem. He has fallen because of the latter, and I have encouraged him to use a cane." (R. 963.)

- As part of an April 14, 2018, Physical RFC statement, Dr. Noparstak advised that the Plaintiff "must" use a cane or other assistive device on all surfaces. (R. 951.)

- At a May 23, 2018, doctor visit, Dr. Noparstak noted that Plaintiff had a gait disorder and that he was referring Plaintiff for a cane and raised toilet seat due to chronic pain. (R. 1084-86.)

- In July 2018, Dr. Noparstak ordered the Plaintiff forearm crutches. (R. 1078.)

- During an August 2, 2018, nurse call for an unrelated ailment, Plaintiff reported that he had been recently fitted with new crutches. (R. 1076.)

- An August 6, 2018, doctor visit note indicated that Plaintiff had seen an orthopedist, that an MRI showed that Plaintiff had a bulging disc, and that Plaintiff found that crutches and a raised toilet seat were helping him with lower back and hip pain. (R. 1070.)

In addition to the evidence of gait disorder and the need for a cane or crutches – recommendations specifically made by Dr. Noparstak, Plaintiff's treating physician – the Plaintiff himself testified that he was initially prescribed a cane, but that he found he was unable to support his body using only a cane due to his thoracic outlet syndrome release surgery as well as the right side of his body being weaker than the left, and that "they moved me from a cane up into these [crutches]." (R. 58-59.) He testified that he used them "all the time" and that he never left his

6

home without them. (R. 66-67.) The Plaintiff also testified that he was unable to walk far distances, and that the farthest distance he was routinely capable of going was from his home to the alley behind his house and then back; that he felt "horrifyingly bad" if he walked too far and that on one such occasion, he lost control of his bladder. (R. 59-60.)

The ALJ noted much of this evidence in his opinion. Specifically, the ALJ noted the January 2015 onset of widespread pain and antalgic gait beginning after the Plaintiff's thoracic outlet syndrome surgeries and continuing throughout that year; that a September 2015 neurological exam showed lower extremity pain and numbness, diminished sensation in his right lower extremity, a wide-based gait, and give way weakness in his right hip and knee flexion; that in the summer and fall of 2017, the Plaintiff reported chronic pain and weakness that caused "his legs to give out" and that his doctors observed an antalgic gait; and that in the summer of 2018, Dr. Noparstak recommended the use of a cane. (R.21-22.)

Despite this review of the evidence, the ALJ found that the hand-held assistive devices that the Plaintiff used on the advice of his doctor were not medically necessary, with complete disregard for the medical advice of the Plaintiff's treating physician. "A treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and is consistent with other evidence in the record." *Gerstner*, 879 F.3d at 261, citing 20 C.F.R. § 404.1527(1). And even if there are sound reasons to refuse to give a treating physician's opinion controlling weight, ALJs must decide the weight of a treating physician's non-controlling opinion by considering, to the extent applicable, the treatment relationship's length, nature, and extent; the opinion's consistency with other evidence; the explanatory support for the opinion; and any specialty of the treating physician. *Id*. at 263, citing 20 C.F.R. § 404.1527(c);

7

*Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008).

In this case, the Plaintiff's treating physician, Dr. Noparstak, first advised Plaintiff to use a cane, and later, crutches. He opined that Plaintiff was disabled due to MERFF, chronic pain due to complex regional pain syndrome, myopathy and muscle spasticity, neuropathy, arthritis, gait and balance disorder, and other conditions (R. 949, 963), and proposed that the Plaintiff could lift less than five pounds occasionally and stand/walk for less than one hour during an eight-hour day. (R. 24-25.) Dr. Noparstak specifically noted that Plaintiff "must . . . use a cane or other assistive device[s]" while engaging in even "occasional standing and walking . . . [on] [a]ll surfaces." (R. 951.)

The ALJ concluded that Dr. Noparstak's opinion did not deserve controlling weight because Plaintiff's "gait was noted to be antalgic at times and a cane was recommended after he complained of problems with his balance but the evidence fails to show it was medically necessary." (R. 25.) But, as discussed more fully below, because the ALJ failed to adequately support those conclusions, the ALJ's decision to discount Dr. Noparstak's opinion is not supported by substantial evidence. *Reinaas v. Saul*, 953 F.3d 461, 465-66 (7th Cir. 2020), citing *Meuser v. Colvin*, 838 f.3d 905, 910 (7th Cir. 2016).

First, the remainder of the ALJ's assessment of Dr. Noparstak's opinion was that the Plaintiff "was able to ride six and a half hours in a car to visit his child in Ohio" and that he "reported gardening and he spent time hobby crafting and cooking." (R. 25.)[8] The ALJ did not explain how these activities undermined Dr. Noparstak's assessment that Plaintiff's hand-held

---

[8] It appears that the ALJ placed great weight on the Plaintiff's testimony regarding these rather limited activities: the opinion mentions the Ohio trip four times (R. 20, 25, 27), crafting eight times (R. 19, 23, 24, 25, 27), and gardening seven times (R. 19, 23, 25, 27).

8

assistive devices were medically necessary, and it is difficult to see how he could have done so: The ability to sit in a vehicle as a passenger bears little relationship to one's ability to balance and ambulate without falling. Moreover, there are "critical differences between activities of daily living and activities in a full-time job . . . a person has more flexibility and scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as [he] would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

Second, when the ALJ ascribed less than controlling weight to Dr. Noparstak's opinion, he was required to review the statutory factors to determine what weight to afford that opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability and consistency of the medical opinion with the record, and the physician's specialization. 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and (c)(3)-(5). Here, there was no such discussion regarding the decision to afford Dr. Noparstak's opinion "little weight." The ALJ was required to explain his decision with reference to the nature and extent of the Plaintiff's treatment and Dr. Noparstak's area of specialty, but he did not. Under the treating physician rule applicable to this case, if an ALJ fails to sufficiently address these statutory factors in declining to afford a treating physician's opinion controlling weight, the case requires remand. *Reinaas*, 953 F.3d at 465-66.

The one statutory factor that the ALJ did address was consistency with other evidence, and on that point, the ALJ's sole basis for discounting Dr. Noparstak's assessment that the Plaintiff's cane and crutches were medically necessary seems to be the testimony of independent medical expert Dr. Subramainiam Krishnamurthi. Dr. Krishnamurthi testified that "everywhere I saw it, gait is normal" and that he saw no gait abnormality mentioned in the record. (R. 75.) As the Court

9

explains further below, Dr. Krishnamurthi's testimony that no gait abnormality appeared in the record is incorrect, as the Plaintiff's medical records were replete with instances of the Plaintiff's gait abnormality. Consequently, the ALJ's reliance on Dr. Krishnumurthi to conclude that Dr. Noparstak's opinion was inconsistent with other evidence is also wrong.

In his testimony, Dr. Krishnamurthi cited to a September 2016 neurology physical exam stating that Plaintiff had a normal gait. (R. 77, R. 581.) He also referred to a primary care note from October 2017 as saying that the Plaintiff had a "normal" examination. (R. 78.) But that report specifically stated that the Plaintiff *had a gait disorder*, and that a physical exam showed an antalgic gait. (R. 926.) Dr. Krishnamurthi also testified that he "did not see any crutches in the records." (R. 78.)[9] Accordingly, Dr. Krishnamurthi opined that Plaintiff could stand and/or walk for six hours out of eight and occasionally balance, climb ramps and stairs, stoop, crouch, kneel, and crawl, an opinion that the ALJ assigned "supreme weight." (R. 25, 71.)

The ALJ made two errors when he relied on Dr. Krishnamurthi's testimony as a basis for not giving controlling weight to Dr. Noparstak's opinion that an assistive device was medically necessary. First, as explained above, Dr. Krishnamurthi's own review and analysis of the medical record with respect to Plaintiff's gait and use of an assistive device was blatantly incorrect. Indeed, the ALJ accepted Dr. Krishnamurthi's opinion even though Dr. Krishnamurthi overlooked much of the medical evidence the ALJ himself included in his written opinion. Second, the ALJ misstated Dr. Krishnamurthi's testimony when he wrote that Dr. Krishnamurthi opined that the

---

[9] Dr. Krishnamurthi testified by phone at the hearing and did not examine the Plaintiff as part of his review of the case. (R. 124.) The ALJ did write that Dr. Krishnamurthi was a "federally designated medical . . . expert[]" with the "necessary eminent qualifications" who had "no distractions from objectivity like trying to please patients" and lacked "emotional or professional connections with claimants," making him "totally objective." (R. 26.) The ALJ summarily noted that Dr. Krishnamurthi gave "good reasons" for his opinion and thus, the ALJ was persuaded that Dr. Krishnamurthi's assessment was accurate.

hand-held assistive devices were medically unnecessary. Contrary to the ALJ's assertion, Dr. Krishnamurthi testified only that he had seen no evidence in the record of any gait abnormality or "any crutches." Dr. Krishnamurthi did not address whether hand-held assistive devices were in fact medically necessary or not; as a result, substantial evidence did not support the ALJ's conclusion in this respect. Therefore, the ALJ's decision to give little weight to the opinion of Plaintiff's treating doctor that an assistive device was medically necessary was not supported by substantial evidence and thus so is the ALJ's own determination to omit the requirement from his RFC. Accordingly, the case must be remanded.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's for Summary Judgment (D.E. 17), denies the Commissioner's Motion for Summary Judgment (D.E. 26), and remands the case for further proceedings consistent with this opinion.

ENTER:

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: May 25, 2023**